WONG SHING et al.,
Plaintiffs-Appellees,

v.

M/V MARDINA TRADER, her engines, etc., et al.

Glenn R. HEYMAN, Receiver for the Estate of Mardina Lines, S.A., a Bankrupt, Plaintiff-Appellant,

v.

Clayburne A. McLELLAND, U. S. Marshal for the Canal Zone, et al., Defendants-Appellees.

Astilleros ESPANOLES, Plaintiff-Appellant,

v.

The Monetary Proceeds from the Sales of the vessel M/V MARDINA TRADER, etc., Defendant-Appellee.

No. 74–3441.

United States Court of Appeals, Fifth Circuit.

Dec. 22, 1977.

Rehearing Denied Jan. 18, 1978.

Bernard Wiczer, Chicago, Ill., for Spira S. Mardina.

Daniel D. Douglass, Balboa, Canal Zone, for Spira & Mardina Lines.

Jacob Rassner, Alan C. Rassner, New York City, for Astilleros Espanoles.

Engelbert J. Berger, Cristobal, Canal Zone, Walter Carroll, Jr., New Orleans, La., Glenn R. Heyman, Chicago, Ill., for Receiver of Mardina Lines.

Lester Engler, U. S. Atty., John B. McCormick, Asst. U. S. Atty., Balboa, Canal Zone, Carlos A. Arosemena, Panama 5 R.P. Panama, for Ship Management.

Roy P. Phillipps, Balboa, Canal Zone, for Shell Oil Co.

Henry L. Newell, Albert J. Joyce, Jr., Balboa, Canal Zone, for Dixie Machine, etc.

DeCastro & Robles, Balboa, Canal Zone, for C. B. Fenton.

Gerard T. Gelpi, Whitfield W. Fitzpatrick, New Orleans, La., for N. O. Cold Storage, et al.

Edward J. DeMartini, Kenner, La., for Dixie Machine.

Harry H. Allen, Jr., Michael C. Pierce, Balboa, Canal Zone, for J. Young & Co.

Before GOLDBERG and HILL, Circuit Judges, and KERR, District Judge.*

KERR, District Judge.

This is an appeal from an admiralty action resulting in the arrest and sale of a motor vessel, "Mardina Trader." The action was commenced in the United States District Court in the Canal Zone.

A chronological history is necessary to a clear understanding of the facts and law involved and are reviewed as follows:

On June 6, 1974, the Mardina Trader, registered in Hong Kong, was arrested and seized in the Canal Zone pursuant to an action in rem filed by various crew members for wages.

On the same date, Wong Shing and other seamen filed a complaint in rem in United States District Court, Balboa Division, against M/V Mardina Trader and Mardina Trader, Ltd., for seamen's wages due and owing them. Thereafter, a judgment was obtained under a writ of venditioni exponas, dated July 15, 1974 and the vessel was ordered to be sold July 30, 1974.

The Mardina Trader was owned by the Mardina Trader, Ltd., a Hong Kong corporation. The Mardina Trader, Ltd., is a wholly owned subsidiary of Mardina Lines, S. A., a Panama corporation, with its principle place of business in Chicago.

On July 13, 1974, Leonard M. Spira was appointed trustee and assignee for the benefit of creditors of Mardina Lines, S. A. On July 29, 1974, Spira alleges to have been first notified of the arrest and potential sale of the vessel. On the same date, Spira appeared before a United States District Judge for the Northern District of Illinois and requested that he be appointed as receiver in the action. On this same day, Spira obtained a temporary restraining order against the United States Marshal of the Canal Zone for the purpose of postponing the sale of the vessel.

* Senior District Judge for the District of Wyoming, sitting by designation.

On July 30, the Mardina Trader was ordered sold by the United States District Court for the Canal Zone in execution of the judgment previously obtained. Prior to the sale of the vessel, a motion to enforce the temporary restraining order previously obtained was presented to the District Court for the Canal Zone.

On the same date, the District Judge of the Canal Zone ordered the judicial sale to proceed and directed the United States Marshal to disregard the temporary restraining order. The vessel was sold on this date for the sum of $610,000.00 to one Robert Motto, a resident of the Republic of Panama.

On August 5, Spira drafted a petition and objection to the confirmation of the sale which was filed in the District Court for the Canal Zone on the same date.

On appeal, appellants urge:

(1) the entry of Default Judgment was without notice and violated the provisions of Federal Rule 5(b) and Rule 55(b)(2) of the Federal Rules of Civil Procedure;

(2) the Court improperly confirmed the sale of the vessel since the interested parties were not given an opportunity to cross-examine the United States Marshal who seized the vessel and conducted the sale;

(3) the Court erroneously denied the priority of a first ship's mortgage over that of other creditors and erroneously requested the first ship's mortgagee to guarantee the claims of lien holders who were junior to the mortgagee;

(4) the Court improperly disregarded the temporary restraining order issued by the District Court in Illinois;

(5) the District Court erroneously confirmed the sale of the vessel; and

(6) the proceedings at the District Court for the Canal Zone constituted an abuse of judicial discretion.

Each of these assignments of error will be discussed in the course of this opinion.

The appellants maintain that the M/V Mardina Trader was improperly arrested and sold without first attempting to make personal service upon or give notice to the owner or to the mortgagees, in violation of the Admiralty Rules of the Supreme Court of the United States, the provisions of 46 U.S.C. 951, and the Fifth Amendment of the Constitution.

This claim is not substantiated by the record. The arrest and sale of the Mardina Trader were proceedings in rem rather than in personam. In rem process is a peculiar feature of admiralty jurisdiction. It is begun by arresting the property which is the subject of the litigation, here the ship Mardina Trader. This arrest or seizure of the property gives the court jurisdiction. Rule C(4) Supplemental Rules, Federal Rules of Civil Procedure, provides for notice as follows:

No notice other than the execution of the process is required when the property that is the subject of the action has been released in accordance with Rule E(5). If the property is not released within 10 days after execution of process, the plaintiff shall promptly or within such time as may be allowed by the court cause public notice of the action and arrest to be given in a newspaper of general circulation in the district, designated by order of the court. Such notice shall specify the time within which the answer is required to be filed as provided by subdivision (6) of this rule. This rule does not affect the requirements of notice in actions to foreclose a preferred ship mortgage pursuant to the Act of June 5, 1920, ch. 250, § 30, as amended.

The record shows that, after arrest of the ship, notice of the action was published in two newspapers of general circulation in the district. In addition, it is shown that Mardina Lines, S. A., had actual knowledge that the vessel was under attachment on the 10th or 12th of June through Mr. Boas, Vice President and Secretary of the corporation. As to notice to the mortgagee, it has been held that every person claiming any right or title in a vessel is charged with

constructive notice of its seizure when notice is properly served upon the vessel itself. *Loud v. United States*, 286 F. 56, 60 (6 Cir. 1923).

"The in rem process of the Admiralty Court is based upon the presumption that the fact of seizure of a vessel alone will result in prompt, actual notice to all interested parties, without the necessity of formal personal notice." *The Mary*, 9 Cranch (13 U.S.) 126, 3 L.Ed. 678 (1815); *United States v. Steel Tank Barge H 1651*, 272 F.Supp. 658 (D.C.1967).

■ The arguments of the appellants based upon 46 U.S.C. 951 are inapplicable. That section provides for notice in actions to foreclose a ship's mortgage. That is not the case here. The libel filed against the Mardina Trader was for unpaid wages.

Since the notice was sufficient and given in the manner required by law, the appellants' Fifth Amendment due process argument is also without merit.

The appellants also assert error in the entry of default and judgment without notice as required by Rule 5(b) and 55(b)(2) of the Federal Rules of Civil Procedure. They maintain that counsel appeared on August 5, 1974 and filed an objection to the confirmation of sale and a motion to set aside the sale of the Mardina Trader. In open Court, counsel for the owners requested leave of Court to vacate all default judgments and permit the filing of answers and schedule a hearing on the merits. This request was refused.

■ The record shows that judgment was obtained in this matter under a writ of venditioni exponas dated July 15, 1974. Counsel did not enter its appearance until August 5, 1974. Alleged violation of 5(b) and 55(b)(2) are obviously without merit. Under the provisions of Rule 5 in an action begun by seizure of property, in which no person need be or is named as defendant, any service made prior to appearance shall be made upon the person having custody of the property at the time of seizure. Since the default judgments were entered prior to any appearance by the appellants, no notice to appellants' counsel was required.

■ The appellants' next contention is that they were not given an opportunity to cross-examine the U. S. Marshal who seized the vessel and conducted the sale. At the confirmation hearing, a deputy Marshal did testify and was cross-examined by the appellants. His testimony, plus that of several other witnesses, was adequate to support the Judge's decision to confirm the sale. If the appellants desire to conduct a fishing expedition in search of possible evidence of possible fraud, collusion or misconduct, they should not look to the Court for assistance. Where no iota of evidence exists to suggest such improprieties may have occurred, the Court is under no duty to affirmatively show that such was in fact the case. There was no error in the Court's refusal to call the U. S. Marshal to the witness stand.

■ During the hearing to confirm the sale, held on August 5, 1974, the Court stated that any bid by the mortgagee would have to include $600,000.00 in cash to provide a fund for payment of the liens prior to the mortgage and that merely submitting a bid on the amount of its mortgage would not be accepted. The record here does not disclose that the mortgagee had any intention of filing a bid either before or after the hearing. To allow an upset bid to prevent confirmation of the sale, an increase in the moneys available to pay liens with priorities greater than that of the mortgagee is required. The mortgagee could not bid its mortgage lien alone, thereby reducing the funds available, and expect the Court to deny confirmation. Until the prior liens were paid, the amounts due on the mortgage could not be used to offset the amount bid. *C. I. T. Corporation v. Oil Screw Frank T. Shearman*, 343 F.Supp. 1283 (D.C.1971).

The $1,500,000.00 amount of the mortgage would easily have permitted the mortgagee to pay the $600,000.00 the Court required in cash plus bidding a portion of its mortgage. If the liens with priority over the mortgage did not consume the entire cash fund, the mortgage holder as the next

claimant would recover on the unbid portion of its mortgage. We fail to see how the Court's action in this matter was either improper or prejudicial.

■■■ The appellants obtained a temporary restraining order from the United States District Court for the Northern District of Illinois to restrain the U. S. Marshal for the Canal Zone from proceeding with the sale of the Mardina Trader. The District Court for the Canal Zone, contrary to the appellants' contention, chose to disregard the temporary restraining order. When a court of competent jurisdiction takes possession of property through its officers, that property is withdrawn from the jurisdiction of all other courts. Where the jurisdiction of a court, and the right of a plaintiff to prosecute his suit in it, have attached, that right cannot be arrested or taken away by proceedings in another court. *Moran v. Sturges*, 154 U.S. 256, 14 S.Ct. 1019, 38 L.Ed. 981 (1894). The Illinois Court was without jurisdiction over the vessel whose sale it sought to restrain. Exclusive jurisdiction rested in the Court in Panama once the ship had been arrested and admiralty proceedings instituted. The Court for the Canal Zone, in a valid exercise of its jurisdiction, chose to disregard the temporary restraining order and direct the Marshal to proceed with the sale.

The Mardina Trader was sold at a judicial auction sale for a bid price of $610,000.00. The appellants contend that confirmation of this price was unconscionable in view of the fact that evidence was presented at the confirmation hearing which supported a value three times that amount. A forced sale will rarely produce the price which could be obtained under more favorable circumstances. The evidence here indicated that the sale was properly advertised and that several bidders appeared. At the hearing to confirm the sale, the appellants produced Mr. Boas, Vice President and Secretary of Mardina Lines, to testify concerning the vessel's value. His testimony established that the Mardina Trader was purchased in May 1973 for $1,533,000.00; that she was insured for $2,000,000.00; and that a survey made in May by a ship sale/purchase broker placed her value at $2,100,000.00. We disregard the evidence of replacement cost since this was based upon the cost of construction of a new ship.

Mr. Boas also testified concerning other possible bidders for the Mardina Trader as follows:

Q. Now one last thing. Do you have a personal knowledge of any potential bidders for the purchase of that vessel as it is today?

A. Yes.

Q. Who are those persons?

A. There's a firm in Chicago.

Q. What's their name?

A. Well, they are all represented by attorneys or leasing people, people of that nature.

Q. This is a syndicate in Chicago; is that Mr. Jack Stowers that you are referring to?

A. That is correct.

Q. And he is an attorney at law practicing in Chicago, Illinois?

A. That's correct.

Q. And what price did they tentatively offer for the purchase of the vessel?

A. Well, subject to inspection of the vessel, in excess of a million and a half dollars; probably around a million-seven.

Q. Were there any other offers that you have knowledge of for the purchase of that vessel?

A. There is another syndicate that I know of that has evinced an interest.

Q. Who is that?

A. It's a New York group.

Q. What are their names?

A. Well, they have come through also a syndicate type of operation, the same type of thing.

■■■ Until confirmation, a sale in admiralty may be set aside at any time, but extreme caution should be used in such actions. *Ghezzi v. Foss Launch & Tug Co.*, 321 F.2d 421 (9 Cir. 1963). The grounds recognized as justifying setting aside a sale include fraud, collusion, and gross inadequacy of price. 2 C.J.S. Admiralty § 247 (1972).

We find no evidence of fraud or collusion. The only issue is whether there existed such a gross inadequacy of price as to result in unfairness. The appellants' testimony as to the value of the ship is undocumented. Likewise, no actual upset bid was received and the testimony of Mr. Boas concerning potential bidders is evasive. Confirmation of sale has been refused where upset bids have been filed which substantially exceed the sale price. In such cases, new sales have been ordered. Where there is no certainty that a resale will produce a higher price, the court is justified in confirming the sale. To do otherwise would prejudice the lien holders who must continue to go unpaid. Refusing confirmation in such situations would also prejudice the purchaser. The highest bidder at a sale should reasonably be allowed to believe that he will receive the benefit of his bargain unless a better price is offered, in which case he may increase his own bid.

Any claims the appellants make as to lack of notice until the end of July are in conflict with evidence that Mr. Boas was aware of the arrest of the ship in early June. Delaying confirmation of sale and the receipt of funds for disbursement until the appellants succeeded in arranging a higher bidder is without legal precedent where notice is properly given. The case of *The East Hampton*, 48 F.2d 542 (2 Cir. 1931), cited by appellants, is distinguished by the fact that there the owner had *no* notice and thus had no opportunity to post a bond under Rule 12 of the Rules of Practice in Admiralty and Maritime Cases, effective March 7, 1921, rescinded and reenacted in Rule E(5)(9) of the Supplemental Rules for Certain Admiralty and Maritime Claims.

We find no error in the court's granting confirmation of the sale at the $610,000.00 figure under the circumstances.

The appellants' final allegation of error is that the entire proceeding was unconscionable and constituted an abuse of judicial discretion. The arguments used to support this allegation are a summary of those previously discussed and a recurrent theme that the trial court improperly refused to allow the appellants additional time to adequately defend. We admit that the trial court here did refuse to grant additional delays which were sought by the appellants and which would not, if granted in moderation, have greatly prejudiced the plaintiffs. However, the evidence is equally strong that with greater diligence the appellants could have overcome many of the difficulties advanced as reasons the court should have granted the appellants' various motions and requests. A review of the entire record persuades us that the trial court did not abuse its discretion in the arrest and sale of the vessel.

AFFIRMED.