**WILMINGTON TRUST COMPANY, as Trustee for GEMB Lending Inc., Plaintiff,**

v.

**M/V MISS B. HAVEN V, her engines, tackle, apparel, appurtenances, etc. having official no. 1167951 and hull serial no. CDRD0117H304, in rem, and Charles M. Pateman, in personam, Defendants.**

No. 09 Civ. 8438(SCR).

United States District Court, S.D. New York.

Dec. 15, 2010.

---

Steven Taitz, Elliott M. Portman, Roe, Taroff, Taitz & Portman, LLP, Patchogue, NY, for Plaintiff.

Mark E. Constantine, Tarrytown, NY, for Defendants.

## MEMORANDUM & ORDER

LORETTA A. PRESKA, Chief Judge:

Plaintiff, Wilmington Trust Co., seeks a final deficiency judgment against the *in personam* Defendant, Charles Pateman, in the wake of a judicial sale that produced insufficient proceeds to satisfy an outstanding preferred ship's mortgage held by Plaintiff. The mortgage was on the *in rem* Defendant, the M/V Miss B. Haven V, for $437,425.98. The Court, Judge Robinson presiding, had entered a default judgment on June 9, 2010 in favor of Plaintiff for the amount of the lien and ordered a sale. At auction on July 16, 2010, Plaintiff bid $180,000 and won. The Court confirmed the sale to Plaintiff on August 2, 2010. Now Plaintiff seeks the difference between the net sale price and the lien amount plus costs and fees—$278,581.59— from Pateman. (Plaintiff's Motion ¶ 7.) Pateman objects to this amount, saying that the auction was tainted by the conduct of the Plaintiff-mortgagee and resulted in an artificially low sale price. Pateman thus desires a downward adjustment to the amount of the deficiency judgment sought. In effect, Pateman's objection is a request for a "fair value offset" to the deficiency judgment. *E.g., S. New Eng. Prod. Credit Ass'n v. O/S My Marie*, 611 F.Supp. 757, 760 (D.Me.1985).

■ In this case, the Court sits in admiralty. "A court of admiralty is a court of equity...." *The Sparkle*, 22 F. Cas. 874, 875 (E.D.N.Y.1874) (No. 13,207). The determination of a deficiency judgment and judicial sale procedures in a maritime lien case are governed by federal law. *Walter E. Heller & Co. v. O/S Sonny V*, 595 F.2d 968, 971 (5th Cir.1979).

■ It is settled that, by way of an *in personam* proceeding, the mortgagee is entitled to a deficiency judgment if the foreclosure sale does not satisfy its lien and costs. *See Bay Casino, LLC v. M/V Royal Empress*, 20 F.Supp.2d 440, 448 (E.D.N.Y.1998); *see also* 46 U.S.C. § 31325(b)(2)(A). And, generally, the sale price is an automatic determination of the amount to be deducted from the debt when determining the amount of the deficiency. *O/S Sonny V*, 595 F.2d at 971,

■■ "The judicial sale price, however, is not always conclusive." *Id.* Where the equities of the situation require it, a fair value offset in the amount of the fair market value of the vessel is applied against the auction sale price to determine the amount of the deficiency. *O/S Sonny V*, 595 F.2d at 971; *Bollinger & Boyd Barge Serv., Inc. v. M/V Captain Claude Bass*, 576 F.2d 595, 598 (5th Cir.1978). Allegations that the price at auction was insufficient, standing alone, do not entitle an *in personam* defendant to a fair value offset because "[d]eficiency judgment suits should not be turned into valuation cases." *O/S Sonny V*, 595 F.2d at 971–72. However, circumstances indicating that the sale itself was flawed, like those justifying the setting aside of a sale, may entitle the defendant to a fair value offset. *See id.; O/S My Marie*, 611 F.Supp. at 760; *see also Latvian Shipping Co. v. Baltic Shipping Co.*, 99 F.3d 690, 692 (5th Cir.1996) ("The grounds recognized as justifying setting aside such a sale include fraud, collusion, and gross inadequacy of price."); *The Sparkle*, 22 F.Cas. at 876 ("[A] sale will be set aside where there has been fraud or misconduct in the purchaser-fraudulent negligence or misconduct in any other person connected with the sale-surprise or misapprehension created by the conduct of the purchaser, or by some other person interested in the sale, or by the officer who

conducts it."). This is particularly true where the mortgagee was the eventual high bidder and the mortgagee's conduct tainted the sale process. *O/S My Marie*, 611 F.Supp. at 760.

■ Pateman's evidentiary submissions, which are uncontested, indicate that may be entitled to a fair value offset in an amount to be determined following a trial. Pateman argues that the sale was flawed because Plaintiff's agent, who was the custodian of the vessel at auction, refused to let other potential bidders start the vessel's motors the day of the auction. The result is that other bidders were deterred from entering higher bids because they did not know whether the motors were operational. As Pateman's affidavit from a certified marine surveyor states, the inability to verify the operability of the vessel's mechanical systems would result in his advising a client not to bid because repairs to these systems are "extraordinarily expensive." (Affidavit of James M. Dias ¶ 5.)

Pateman submitted an affidavit from a disappointed bidder at the sale who avers that he boarded the vessel and asked its custodian if he could start its motors to see if they were operational. (*Id.;* Affidavit of Raymond J. Tartaglione ¶¶ 3, 7.) The custodian said "no" because he did not have keys. (Tartaglione Aff. ¶ 8.) However, the bidder states that he noticed the keys on the galley countertop. (*Id.* ¶ 9.) The bidder nevertheless placed a bid of $170,000 for the Miss B. Haven V. (*Id.* ¶ 11.) The custodian, Plaintiff's agent, topped that bid with the winning $180,000 bid, but the bidder was reluctant to bid a higher amount because he could not verify the operability of the vessel's mechanical systems. (*Id.* ¶¶ 11–12,) Pateman thus suggests that the Plaintiff's conduct at auction resulted in the vessel being sold at an artificially depressed price. (Opposition Memorandum ¶ 8; *see id.* ¶ 11 (suggesting that similar boats have a market value of $399,000 to $480,000).)

The Court is persuaded. Plaintiff's conduct is precisely the type of conduct that typically triggers the availability of a fair value offset. *O/S Sonny V*, 595 F.2d at 972 & n. 2; *O/S My Marie*, 611 F.Supp. at 760 ("In all of those [fair value offset] cases, the mortgagee was itself ... the purchaser at the sale."). Indeed, a fair value offset has been denied where there was no showing that "the mortgagee conducted its bidding with the intent to or for the purpose of causing the vessel to be unfairly sold at a price less than its market value." *O/S My Marie*, 611 F.Supp. at 760; *see Dynamic Marine Consortium, S.A. v. M/V Latini*, 179 F.3d 278, 279–80 (5th Cir.1999). Here, the mortgagee-Plaintiff's conduct deterred other bidders prepared to make higher bids and may have caused the vessel to be "unfairly sold at a price less than its market value." *O/S My Marie*, 611 F.Supp. at 760.

■ Plaintiff makes two arguments to the contrary. First, it says that Pateman had a chance to object to the sale when Plaintiff moved for confirmation. (Plaintiff's Reply Memorandum at 1.) Second, Plaintiff says that given the wide discretion given to the auctioneer, the auction was properly conducted and that the sale should therefore not be set aside. (*Id.* at 5.)

■ Putting to one side the fact that both of these arguments seem to suggest, incorrectly, that Pateman seeks to set aside the sale itself, the Court rejects Plaintiff's arguments. As to Plaintiff's first argument, there is no requirement that the defendant ask the court to set aside the sale. *See O/S Sonny V*, 595 F.2d at 972; *cf. Am. Tramp Shipping & Dev. Corp. v. Coal Export Corp.*, 276 F.2d 570, 570 (4th Cir.1960) (per curiam) (affirming

order to conduct a resale where mortgagee *did not appear* at first sale but later entered a substantially higher bid). While it may be better practice to challenge the confirmation of the sale, a confirmation proceeding is different in kind from a deficiency judgment proceeding. *Compare O/S Sonny V,* 595 F.2d at 972 (challenge to deficiency judgment seeks to reduce debtor's personal liability), *with First City Nat'l Bank of Houston v. Brazosport Towing Co.,* 585 F.Supp. 115, 118 (S.D.Tex. 1984) ("One of the functions of a judicial sale is to protect the interests of the creditors....").

As to Plaintiff's second argument, the Court is not persuaded. Plaintiff's conduct at the sale deterred other bidders and may have artificially depressed the price at which the vessel was sold. It seems unrealistic to conclude that disallowing potential bidders from starting the vessel's motors is reasonable procedure, particularly when the gatekeeper is Plaintiff's agent. Plaintiff is correct that potential bidders could have arranged for an opportunity to do so earlier, but it is a minimal burden for the custodian simply to allow a bidder to start the vessel's motors. Moreover, the evidence submitted to the Court is one-sided. Plaintiff presents only abstract legal arguments in support of its position that the sale process was reasonable, whereas Pateman presents uncontested affidavits, one from a disappointed bidder who claims two others similarly were deterred from bidding by the custodian's actions, indicating that the custodian prevented bidders from doing their diligence. (Tartaglione Aff. ¶ 13.) The Court agrees with Pateman; the sale process was sullied because of Plaintiff's conduct.

Plaintiff's conduct at the sale bespeaks the vessel's name; it raises the spectre of a winning bid that did not indicate the fair value of the Miss B. Haven V. While Plain-

tiff is entitled to the benefit of its bargain at the sale because Pateman does not challenge the sale itself, Pateman is entitled to a trial as to the fair value of the vessel that day to determine the proper amount of the deficiency to be entered. *See O/S Sonny V,* 595 F.2d at 972. The Court notes that Pateman does not challenge either the amount of the outstanding lien or Plaintiff's deficiency calculations in its motion, other than the credit for the sale price of the vessel. He therefore may not challenge Plaintiff's submissions aside from the fair value of the vessel at trial; however, the Court reserves judgment on the issue of Plaintiff's request for attorney's fees to collect the deficiency.

The parties shall confer and appear by telephone on Monday, December 20, 2010, at 2:00 pm to set a date for trial, which shall be scheduled expeditiously.

SO ORDERED.